UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

CHRIS L. CUNNINGHAM, TIMOTHY C.  )
ROSS and ZED MOORE,               )
                                   )
       Plaintiffs,              )
vs.                                )      Case No. 04-cv-4136-JPG
                                   )
SNAP-ON TOOLS COMPANY,             )
a Wisconsin Corporation,           )
                                   )
       Defendant.              )

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Snap-on Tools Company's ("Snap-on")

Motion for Reconsideration (Doc. 32). Snap-on asks the Court to reconsider certain parts of its

November 29, 2005, order (Doc. 31) denying in part Snap-on's summary judgment motion (Doc.

24). Plaintiffs Chris L. Cunningham ("Cunningham"), Timothy C. Ross ("Ross") and Zed Moore

("Moore") have responded to the motion (Doc. 40).

**I.      Background**

The events that gave rise to this case, as established by the evidence viewed in the light most

favorable to the plaintiffs, are set forth in the Court's November 29 order and need not be restated in

detail here. It suffices for the purpose of this motion to note that the plaintiffs believe they were

entitled to severance benefits when they stopped working at Snap-on's Mt. Carmel, Illinois, plant

shortly before Snap-on closed the plant. They brought this suit alleging claims under the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, for an arbitrary and

capricious denial of benefits, breach of fiduciary duty, and discrimination, as well as a variety of

state law causes of action.

Snap-on's summary judgment motion asked the Court to dismiss the plaintiffs' state law

claims because they are preempted by ERISA and to grant summary judgment on the plaintiffs'

ERISA denial of benefits claims because the decision to deny those benefits was not arbitrary and

capricious.  In its November 29 order, the Court found that Moore and Cunningham had no arguable

claim to severance benefits under the severance plan and therefore had no standing to sue under

ERISA.  Accordingly, it dismissed Moore's and Cunningham's ERISA claims for lack of standing.

The Court further found that Ross had standing to sue under ERISA because there was a genuine

issue of material fact regarding whether Snap-on's denial of benefits was arbitrary or capricious, and

dismissed Ross's state law claims as preempted by his ERISA claim.  Because neither party had

thoroughly briefed the issue of whether Moore's and Cunningham's state law claims were

preempted by ERISA in light of the fact that they lacked standing to bring an ERISA claim, the

Court declined to dismiss those state law claims at that time.

Snap-on filed the pending motion asking the Court to reconsider its decision not to dismiss

Ross's ERISA claims or Moore's and Cunningham's state law claims.

**II.     Analysis**

Reconsideration of a court's ruling is not expressly authorized by the Federal Rules of Civil

Procedure and is conducted at the discretion of the court.  Courts have recognized that occasionally

they misunderstand the parties and make errors of fact or of law.  Parties should be allowed to bring

such errors to the court's attention to give the court the opportunity to correct them.

      A.     Moore's and Cunningham's State Law Claims

In light of the important federal policy of achieving uniform standards for administration of

employee benefit plans, the Court will reconsider its denial of Snap-on's motion for summary

judgment on Moore's and Cunningham's state law claims.

Snap-on argues that the preemption analysis applicable to Moore's and Cunningham's state

law claims is identical to the analysis the Court applied to Ross's state law claims, that is, that the

broad preemption provision of § 514(a) of ERISA, codified at 29 U.S.C. § 1144(a), forecloses those

state law claims.  For this reason, Snap-on believes Moore's and Cunningham's claims should

likewise be dismissed.  The plaintiffs, on the other hand, argue that they may plead alternative state

law claims that may proceed if they do not have standing to sue under ERISA.

As the Court discussed in its November 29 order, § 514(a) of ERISA provides for

preemption of state laws that "relate to" a benefit plan governed by ERISA.  In making the

determination whether state law "relates to" an employee benefit plan governed by ERISA and is

thus preempted by ERISA under § 514(a), the phase must be applied and limited in light of "the

objectives of the ERISA statute as a guide to the scope of the state law that Congress understood

would survive."  *De Buono v. NYSA-ILA Medical & Clinical Servs. Fund,* 520 U.S. 806, 814 (1997).

 Broadly stated, those objectives are to protect plan participants and beneficiaries, to improve the

character and soundness of the plans, and to create a nationally uniform standard for administration

of employee benefit plans.  *Trustees of the AFTRA Health Fund v. Biondi*, 303 F.3d 765, 774-75

(7th Cir. 2002).  In light of ERISA's objectives, it is clear that "[t]he requisite connection exists

under § 514(a) if a law . . . provides alternative enforcement mechanisms" to § 502(a) of ERISA,

which contains a comprehensive enforcement scheme and which Congress intended to be the

"exclusive vehicle" for actions by plan participants asserting claims for benefits.  *Administrative

Comm. of Wal-Mart Stores, Inc. Assocs' Health & Welfare Plan v. Varco*, 338 F.3d 680, 689-90

(7th Cir. 2003)  (citing *New York Conf. of Blue Cross v. Travelers Ins. Co.*, 514 U.S. 645, 658

(1995));  *see  Ingersoll-Rand v. McClendon*, 498 U.S. 133, 144 (1990);  *Pilot Life Ins. Co. v.

Dedeaux,* 481 U.S. 41, 52 (1987).  As the Court noted in its November 29 order, a plan participant's

state law causes of action that seek benefits from an ERISA plan constitute such alternative

enforcement mechanisms and are therefore preempted.

Snap-on's brief highlights the nuance that the preemption of claims that "relate to" an

ERISA plan cannot be avoided simply because the plaintiff is left without a remedy under ERISA. *See Lister v. Stark*, 890 F.2d 941, 946 (7th Cir. 1989).  In *Lister*, an employee sued a pension plan seeking credit for service to his employer prior to a break in service.  *Id.* at 942.  Despite terms to the contrary in the pension plan documents, the employer orally promised the employee when he returned from his break in service that he would receive continuous pension service credit dating from his original employment.  *Id.* at 943.  Years later when the employee applied for pension benefits, consistent with the pension plan terms he did not receive that credit.  *Id.*  He then sued the pension plan not under ERISA, where he could not state a claim because it would be based on an impermissible oral modification of a written plan, but under state law seeking a declaration that he was entitled to his denied service credit.  *Id.* at 942.  The Court of Appeals concluded that the employee's claim was completely preempted by ERISA and should therefore be recharacterized as an ERISA claim.  *Id.* at 944.  It further noted that because the employee's claim would directly impact on the administration of a plan governed by ERISA, which Congress intended to leave solely to the province of federal law, which displaced related state law, the plaintiff was limited to the remedies allowed by ERISA, even if ERISA provided the plaintiff no relief.  *Id.* at 945-46.  The Court noted,

> [T]he availability of a federal remedy is not a prerequisite for federal preemption. The Supreme Court has specifically rejected such an argument.  "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."

*Id.* at 946 (quoting *Pilot Life,* 481 U.S. at 54).  The Court concluded that the plaintiff had no remedy and his claim must be dismissed.  *Lister*, 890 F.2d at 946.

It is clear in this case that Moore and Cunningham seek to obtain benefits from Snap-on's ERISA-covered severance plan via their state law causes of action.  These causes of action are

4

impermissible alternative enforcement mechanisms rejected by Congress when it passed ERISA.

Therefore, Moore and Cunningham are foreclosed from raising those claims.  That they are left

without a remedy under ERISA for the wrongs they allege is immaterial under the rule recognized

in *Lister*.

      *Kamler v. H/N Telecommunication Services*, 305 F.3d 672 (7th Cir. 2002), does not counsel

otherwise.  The plaintiffs cite *Kamler* for the proposition that state law claims may be pled in the

alternative to ERISA claims.  However, *Kamler* involved a former employee who sought to

establish standing to bring an ERISA claim based on theories of estoppel and breach of fiduciary

duty, not independent state law causes of action.  *Kamler*, 305 F.3d at 678.  The *Kamler* plaintiff

argued that he failed to enroll in an employee welfare plan based on misrepresentations of his

employer that he was already enrolled.  *Id.*  In this case, as explained in the Court's November 29

order, the evidence does not show that Snap-on made any sort of misrepresentation that induced

Moore or Cunningham to terminate their own employment, thus disqualifying them for benefits

under the severance plan.  Thus, they cannot rely on theories of estoppel and breach of fiduciary

duty to establish standing under ERISA, and, as explained in the Court's prior order, they do not

have standing under ERISA.  For this reason, this case is distinguishable from *Kamler*.

      The plaintiffs also cite *Glutzer v. Prudential Insurance Company of America*, 997 F. Supp.

1070 (N.D. Ill. 1998), and *Madden v. Country Life Insurance Company*, 835 F. Supp. 1081 (N.D.

Ill. 1993), in support of their position.  It is true that *Glutzer* states, "If a plaintiff does not have

standing to bring an ERISA claim because the plaintiff is neither a 'participant' nor a 'beneficiary,'

then the plaintiff's state law claims are not preempted by ERISA."  *Glutzer*, 997 F. Supp. at 1072.

However, that statement must be viewed in context.  In *Glutzer*, the wife of the sole shareholder of a

corporation was covered by a health insurance benefit plan provided through that corporation.  *Id.*

She sued under state law for declaratory and injunctive relief when the plan refused to cover certain treatments she received. *Id.* at 1071.  The main issue in *Glutzer*, however, was whether the relationship between the plaintiff and the health plan was governed by ERISA, not, as in the case at bar, whether a former employee could maintain state causes of action seeking benefits from a plan where the former employee's relationship with the plan, if any, was clearly governed by ERISA. Thus, that case provides little guidance to Moore's and Cunningham's case.  To the extent that language in *Glutzer* may be read to hold that an individual can seek benefits from an ERISA plan outside of ERISA where the individual's relationship with the plan, if any, is covered by ERISA, the Court respectfully disagrees with that holding in light of *Lister*.

Similarly, in *Madden* the critical question was whether ERISA preempted the state law claims of a business owner under a health insurance benefit plan covered by ERISA.  In that case, the owner of a business filed a state law action seeking benefits from the plan, which was clearly governed by ERISA with respect to benefits claims of non-owner employees. *Madden*, 835 F. Supp. at 1083. The Court of Appeals acknowledged that claims by employees under the plan would be governed by, and therefore preempted by, ERISA, but found that because the owner was not an employee, his relationship with the plan was not governed by ERISA. *Id.* at 1086.  Therefore, the Court of Appeals concluded, he did not have standing to sue under ERISA and could bring a state law cause of action. *Id.* at 1086.  Critical to its decision, however, was the fact that the contractual relationship between the owner and the plan was clearly established, and to deprive the owner of a remedy for a breach of that relationship would be unfair. *Id.*

*Madden* is distinguishable from the case at bar because Moore's and Cunningham's dispute with the Plan does not stem from a clearly established contractual relationship that is placed beyond the reach of ERISA because of their status as owners.  On the contrary, had Moore and Cunningham

had any colorable claim to severance benefits, that claim would be governed by ERISA.  In their

situation, to let them pursue independent state law claims to recover benefits from a plan where

distribution of those benefits to them must occur, if at all, under the rules of ERISA would defeat

Congress's intent in § 514(a) of ERISA to displace state employee benefits laws in favor of uniform

federal employee benefits rules.

For these reasons, the Court will grant the motion to reconsider the disposition of Moore's

and Cunningham's state law claims and will dismiss those claims as preempted by § 514(a) of

ERISA.

   B.  Ross's ERISA Claim

    1.  Claim to Recover Benefits

Snap-on urges the Court to reconsider its decision allowing Ross's ERISA claim for benefits

to proceed to trial.  It repeats some of the same arguments it made in its original motion and adds

new ones that it could have raised in its original motion, implores the Court to find Ross's affidavit

implausible, and submits additional evidence in support of its position.  It has not, however,

submitted anything or made any argument that causes the Court to change its determination that a

reasonable jury could find that Jerry Dalton's October 17 meeting with Ross could have resulted in a

qualified "separation" under the Plan.  For this reason, the Court declines to reconsider its prior

ruling on this issue.

    2.  Breach of Fiduciary Duty and Discrimination Claims

Snap-on also asks the Court to reconsider the decision to allow Ross's ERISA claims for

breach of fiduciary duty and discrimination to proceed to trial.  The Court's prior ruling rested on

the sole fact that Snap-on did not address these theories in its summary judgment motion.  While

this may have been understandable in light of the fact that Ross's pleading of such claims tests the

limits of federal notice pleading, the Court declines to allow Snap-on to raise arguments on a motion

to reconsider that could have and should have been raised in its original motion.  If Ross cannot

prove these claims at trial, and based on the caselaw cited by Snap-on it appears likely that they may

not be able to, those claims will be subject to a motion for a directed verdict.

## III.      Conclusion

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** the motion to

reconsider (Doc. 32).  The Court **GRANTS** the motion to the extent that it seeks dismissal of

Moore's and Cunningham's state law claims in counts 2 through 7 and **DISMISSES** those claims

**with prejudice**.  Moore and Cunningham are terminated from this action.  The Court **DENIES** the

motion to the extent that it seeks dismissal of Ross's ERISA claims in count 1.  The Court

**DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.


**Dated this 8th day of June, 2006.**

BY THE COURT

s/ J. Phil Gilbert
**J. Phil Gilbert**
**District Judge**